**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CF INFLIGHT, LTD, | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
|         v. | : | |
| | : | |
| CABLECAM SYSTEMS, LTD, et al. | : | NO. 03-CV-5374 |
|     Defendants. | : | |

## MEMORANDUM AND ORDER

LEGROME D. DAVIS, J.                                            JANUARY ___, 2004

## I.    INTRODUCTION

Presently before the Court are the Motion for Preliminary Injunction filed on December 24, 2004 by CF Inflight, LTD ("Plaintiff")(Doc. No. 5), the Motion for Expedited Discovery filed on December 29, 2004 by Plaintiff (Doc. No. 6), the Answering Brief in Opposition to Plaintiff's Motion for Preliminary Injunction filed on January 16, 2004 by Cablecam Systems, LTD. ("Defendant")(Doc. No. 16), the Reply Brief in Support of Preliminary Injunction filed on January 20, 2004 by Plaintiff (Doc. No. 17), the Proposed Findings of Fact and Conclusions of Law filed on January 26, 2004 by Plaintiff (Doc. No. 25), the Proposed Findings of Fact and Conclusions of Law filed on January 27, 2004 by Defendant (Doc. No. 26), and the Transcript of the Evidentiary Hearing conducted on January 26, 2004 (Doc. No. 28).  Also before the Court are the Motion to Strike the Post Hearing Findings of Fact and Conclusions of Law filed on January 28, 2004 by Defendant (Doc. No. 30), and the Response in Opposition to the Motion to Strike filed on January 28, 2004 by Plaintiff (Doc. No. 29).

For the reasons set forth herein, Plaintiff's Motion for Preliminary Injunction (Doc. No. 5) is DENIED.  Plaintiff's Motion for Expedited Discovery (Doc. No. 6) is DENIED as moot

because it is subsumed by the Amended Scheduling Order issued by the Court on January 12, 2004 (Doc. No. 14).  Defendant's Motion to Strike is GRANTED.[1]

## II.    PROCEDURAL HISTORY

On September 24, 2003, Plaintiff filed a Complaint against Cablecam International and Cablecam Systems, Ltd. alleging that Cablecam's Multi-V camera suspension system infringes Plaintiff's U.S. Patent No. 4,710,819 ("'819 Patent") (Doc. No. 1).  CF Inflight filed an Amended Complaint on November 24, 2003 naming Cablecam as the sole defendant.  (Doc. No. 4).  On December 24, 2003, Plaintiff filed a Motion for Preliminary Injunction seeking to prevent Cablecam from operating its Multi-V system at the CBS Sports ("CBS") televised Super Bowl scheduled to air on February 1, 2004.  Pursuant to this Court's Order of January 12, 2004 (Doc. No. 14), the parties conducted discovery and submitted briefing on Plaintiff's Motion.  On January 26, 2004, the Court heard oral arguments and testimony regarding the parties' positions and, having been fully briefed thereon, renders the following findings of fact and conclusions of law.

## III.    FINDINGS OF FACT

1.  CF InFlight develops novel camera systems for the entertainment industry, particularly for athletic broadcasting.  As the patent assignee from the inventor of the Skycam®, Mr. Garrett Brown ("Mr. Brown"), CF Inflight, has the right to assert all causes of action and seek

---

[1]Contrary to CF Inflight's suggestion, the Court did not request nor issue an Order granting the parties permission to file such findings.  Pl.'s Opp'n at 1.  Plaintiff erroneously interpreted the Court's comment regarding the submission of any relevant post-hearing motions only with respect to the issue of bond as a request for post-hearing findings.  Hr'g Tr. at 275.  The Post Hearing Findings of Fact and Conclusions of Law filed on January 28, 2004 by Plaintiff (Doc. No. 27) is stricken in accordance with Rule 12(f) and was not considered in rendering this decision.  Fed. R. Civ. Pro. 12(f).

equitable or legal remedies for infringement of the '819 Patent through its principal, Roland Thompson ("Mr. Thompson").

2. Among many other camera devices for which he holds approximately fifty patents, Mr. Brown, a Philadelphia inventor and cinematographer, invented the Skycam®, a camera system that operates suspended from a computerized transport device. Pl.'s Mem. at 2.

3. Mr. Brown is a member of the American Society of Cinematographers, the Directors Guild, the Screen Actors Guild and the Academy of Motion Picture Arts and Sciences. Pl's Mem at Ex. C. He has published numerous articles relating to cinematography and has lectured at film festivals and schools. Id. In addition to filming professional and amateur sporting events, his work has been used in films such as "The Shining," "Rocky," and "Return of the Jedi." Hr'g Tr. at 100. He has won an Academy Award®, Emmy Awards, and numerous international awards. Id.

4. Mr. Brown conceived of the Skycam® after a discussion with Merlin Olson and he deployed the first commercial system in 1984. Hr'g Tr. at 102.

5. Cablecam International, Inc. ("Cablecam") is a corporation engaged in the development and deployment of various camera suspension systems. Cablecam focuses its business primarily in the area of television, film, commercials and professional sports. D.'s Opp'n at 8.

6. James Rodnunsky ("Mr. Rodnunsky"), Cablecam's principal and designer of the Multi – V camera system, has developed innovative camera systems for nineteen years. Some of the Cablecam systems designed by Mr. Rodnunsky include the Traveling High Line, Dial High Line, Flying-V and the Manned A to B. D.'s Opp'n at Ex. 1. In addition to filming professional and amateur sporting events, his work has been used in films such as "Hook,"

3

"Terminator 2," "Con Air," "Dudley Doright," "Spiderman," and "Daredevil." Hr'g Tr. at

186-187. He has earned an award for technical achievement from the Academy of Motion

Picture Arts and Sciences and six Emmy awards. Id. at 188.

7. Mr. Rodnunsky first conceived of the Multi-V when asked to develop a system to provide

aerial coverage for Fox Sports. According to Mr. Rodnunsky, the Multi-V camera system

evolved from combining the principles of the Flying V (a system deployed by Cablecam at

NBA basketball games) with the rolling tag system (a concept developed by Cablecam during

the filming of a movie in Prague). Hr'g Tr. at 214-215.

8. The United States Patent and Trademark Office ("PTO") issued the '819 Patent, titled

"Suspension System for Supporting and Conveying Equipment Such as a Camera," to Mr.

Brown in compliance with the Patent Statute and without defect or informality in issuance.

U.S. Patent No. 4,710,819 (issued Dec. 1, 1987).

9. The term of the '819 Patent is seventeen years and expires on December 1, 2004. Claim 1 of

the '819 Patent is as follows:

> A suspension system for supporting and conveying equipment, said system comprising: at least three elongate, flexible members; mounting means spaced-apart from each other for extendably and retractably supporting said flexible members;
>
> an equipment support member attached to each of the flexible members, wherein the equipment support member is adapted to be moved in three directions in response to movement of the flexible members; and
>
> means for operatively connecting said equipment with said equipment support member so that said equipment is in controllable isolation from angular movement of said equipment support member.

Claim 58 of the '819 Patent is as follows:

> In a suspension system for supporting equipment in three-dimensionally adjustable positions by means of at least three cables which are operatively

4

connected to said equipment and which extend away from said equipment in different directions, the combination of:

at least three elevated support means, one for each of said cables, spaced from said equipment and defining the corners of a three-dimensional space above the surface over which they are elevated;

means for adjusting the lengths of the cables between the respective support means and the equipment in such relationships as to move said equipment in three directions to place the equipment in any desired position within said three-dimensional space; and

means for providing controllable angular isolation of said equipment from the cables which support said equipment.

U.S. Patent No. 4,710,819 (issued Dec. 1, 1987).

10. In July 2003, CF Inflight entered into an exclusive contract with ESPN for the ESPN Sunday Night Football and ABC Monday Night Football telecasts.  Pl.'s Mem. at 4.

11. The exclusivity contract precluded Plaintiff from providing similar services to Fox Sports ("Fox") or CBS who had both expressed interest in obtaining aerial footage of NFL games without the express permission of ESPN.  Id. .

12. Upon request by Fox, Cablecam has been using its Multi-V system since August 2003 for televising NFL Football games.  D.'s Opp'n at 8.

13. Beginning in October 2003, CBS was awarded the rights to televise many of the 2003-2004 NFL playoff games and the February 2004 Super Bowl and sought to award Plaintiff the contract to provide aerial camera perspective for the post-season NFL football games.  Pl.'s Reply at Ex. A.

14. After lengthy negotiation for permission to enter into contract with CBS despite the exclusivity contract with ESPN, Mr. Thompson and CBS were unable to come to an agreement.  Pl.'s Reply at Ex. A; Hr'g at 53.

15. Via e-mail correspondence, CBS communicated to Plaintiff its intention to negotiate with both Cablecam and Spydercam, another competitor.  CBS awarded a contract to Cablecam for all but one post-season NFL games on or about Wednesday, December 17, 2003.  Hr'g Tr. at 46.

## IV.    DISCUSSION

### A.    Standard for Preliminary Injunction

The standard for a preliminary injunction is the same as that for a temporary restraining order.  Bieros v. Police Chief Nicola, 857 F. Supp. 445, 446 (E.D.Pa. 1994). A party to a patent dispute, must convince the Court that the following factors favor granting preliminary injunctive relief: "(1) the likelihood that the moving party will succeed on the merits; (2) the extent to which the moving party will suffer irreparable harm without injunctive relief; (3) the extent to which the nonmoving party will suffer irreparable harm if the injunction is issued; and (4) the public interest."  Novartis Consumer Health, Inc. v. Johnson & Johnson-Merk Consumer Pharms. Co., 290 F.3d 578, 586 (3d Cir. 2002) citing Clean Ocean Action v. York, 57 F.3d 328, 331 (3d Cir. 1995); see also Impax Laboratories, Inc. v. Aventis Pharmaceuticals, Inc., 235 F.Supp.2d 390 (D.Del. 2002); Merrill Lynch v. Napolitano, 85 F. Supp. 2d 491, 496 (E.D.Pa. 2000).

### B.    Likelihood of CF Inflight's Success on the Merits

In order for CF Inflight to obtain a preliminary injunction to enjoin Cablecam from providing the Super Bowl coverage, it must establish that it will likely succeed on the merits of its patent infringement claim.  The Third Circuit has recognized that "[i]t is not necessary that the moving party's right to a final decision after trial be wholly without

6

doubt; rather, the burden is on the party seeking [injunctive] relief to make a prima facie

case showing a reasonable probability that it will prevail on the merits." Oburn v. Shapp,

521 F.2d 142, 148 (3d Cir. 1975); see also Acierno v. New Castle County, 40 F.3d 645,

653 (3d Cir. 1994). "'Reasonable' probability is used in the opinions interchangeably

with 'substantial' likelihood of success." Gucci Am., Inc. v. Daffy's, Inc., 2000 WL

1720738, at *7 (D.N.J. Nov. 14, 2000) citing Instant Air Freight Co. v. C.F. Air Freight,

Inc., 882 F.2d 797, 800 (3d Cir. 1989). "'Probability of success' implies that the moving

party, usually the plaintiff, must have a very clear and strong case." J. Thomas McCarthy,

McCarthy on Trademarks and Unfair Competition § 30:45 at 30-80. In the patent

infringement context, to establish likelihood of success on the merits, the moving party

must show, consistent with the burdens of proof required at trial, that (1) its patent was

infringed, and (2) any challenges to the validity and enforceability of its patent "lack

substantial merit." Purdue Pharma L.P. v. Boehringer Ingelheim GmbH, 237 F.3d 1359,

1366 (Fed. Cir. 2001). The written submissions, exhibits, and testimony presented to the

Court do not clearly and substantially establish the likelihood of CF Inflight's success on

the merits.

        1.   Validity of the '819 Patent

CF Inflight must establish more than the patent's validity in order to succeed; it

must also show Cablecam's infringement and rebut the challenges to the '819 Patent

advanced by Cablecam. CF Inflight argues that Cablecam's device infringes "virtually

every element of the Skycam® camera system" in violation of the '819 Patent Claims 1

and 58; it further infringes, proposes Plaintiff, under the Doctrine of Equivalents. See

Pl's. Mem. at 7.   It infringes the Skycam® patented technology because it embodies each

claim element or its equivalent.  Hilton Davis Chemical Co. v. Warner-Jenkinson Co., 62

F.3d 1512, 1517-18 (Fed. Cir. 1995) (en banc), rev'd on other grounds, 520 U.S. 17

(1997).  A patent is presumed valid and this presumption exists at every stage of the

litigation.  Canon Computer Systems, Inc. v. Nu-Kote Intern., Inc., 134 F.3d 1085, 1088

(3d Cir. 1998) citing PPG Indus., Inc. v. Guardian Indus. Corp., 75 F.3d 1558, 1566 (Fed.

Cir.1996); H.H. Robertson, Co. v. United Steel Deck, Inc., 820 F.2d 384, 387-88 (Fed.

Cir.1987), overruled on other grounds by Markman v. Westview Instruments, Inc., 52

F.3d 967 (Fed. Cir.1995) (en banc), aff'd, 517 U.S. 370 (1996).  Because of the

presumption that the patent is valid, the patentee responding to a challenge to patent's

validity need only submit sufficient evidence to rebut any proof of invalidity offered by a

challenger. 35 U.S.C.A. § 282.   Thus, where the challenger fails to identify any

persuasive evidence of invalidity, the very existence of the patent satisfies the patentee's

burden on the validity issue.  H.H. Robertson, Co., 820 F.2d at 388 (stating that a

preliminary injunction is determined "in the context of the presumptions and burdens that

inhere at trial on the merits").[2]  At the preliminary injunction stage, it is the defendant's

burden to show that there is a "substantial question" of invalidity, at which point the

burden shifts to the patentee to show that the argument "lacks substantial merit."

Genentech, Inc. v. Novo Nordisk, A/S, 108 F.3d 1361, 1364 (Fed. Cir. 1997); New

---

[2] As Plaintiff summarizes, "this statutory presumption derives in part from recognition of the technological expertise of the patent examiners."  Interconnect Planning Corp. v. Feil, 774 F.2d 1132, 1139 (Fed. Cir. 1985).  The presumption is also based on "the basic proposition that a government agency such as the ... Patent Office [is] presumed to do its job."  American Hoist & Derrick Co. v. Sowa & Sons, Inc., 725 F.2d 1350, 1359 (Fed. Cir.).

England Braiding Co. v. A.W. Chesterton Co., 970 F.2d 878, 882-83 (Fed. Cir. 1992).

To establish a substantial question, Cablecam challenges the validity of Claim 1 under 35

U.S.C. § 103 in view of French Patent No. FR 2,318,664 issued to Kennedy and in view

of U.S. Patent No. 2,446,096 issued to Moore, both of which are prior art to the '819

Patent.  D.'s Opp'n at 34-44. Cablecam challenges the validity of Claim 58 with the same

references and by arguing that Claim 58 is unpatentable under 35 U.S.C. § 103 in view of

U.S. Patent No. 3,043,444 issued to Melton and  in view of U.S. Patent No. 1,634,950 to

Lucian. Id.  CF Inflight questions the merits of Cablecam's challenge by arguing that "the

additional cited art is merely duplicative of the prior art provided to the Patent Office by

Garrett Brown and has already been considered by the Patent Office."  Pl.'s Mem. at 9.

CF Inflight further argues that these references do not combine to provide a sufficient

showing of invalidity.  Id. at 10.  Cablecam has identified persuasive evidence of

invalidity; as such, the existence of the '819 Patent is insufficient to establish validity.

But, even were the Court to presume validity of the '819 Patent, that does not end the

inquiry.

　　　　　　　2.　　　Cablecam's Alleged Literal Infringement

　　　　CF Inflight has claimed that Cablecam's Multi-V product "literally infringes" its

'819 patent.  Literal infringement of a claim exists when every limitation recited in the

claim is found in the accused device; that is, when the properly construed claim reads on

the accused device exactly.  Amhil Enterprises v. Wawa, Inc., 81 F.3d 1554, 1562 (Fed.

Cir.1996).  Literal infringement of means-plus-function claim limitation requires that

accused device employ structure identical or equivalent to structure disclosed in patent

9

and that the accused device performs the identical function specified in claim.  Sunrise Medical HHG, Inc. v. AirSep Corp., 95 F.Supp.2d 348 (W.D.Pa. 2000) citing 35 U.S.C.A. § 112.  One cannot avoid infringement merely by adding elements if each element recited in the claims is found in the accused device.  A.B. Dick Co. v. Burroughs Corp., 713 F.2d 700, 703 (Fed. Cir.1983) ("It is fundamental that one cannot avoid infringement merely by adding elements if each element recited in the claims is found in the accused device."); AstraZeneca AB v. Mutual Pharmaceutical Co., Inc., 250 F.Supp.2d 506, 515 (E.D.Pa. 2003)("The presence of additional elements is irrelevant if all the claimed elements are present in the accused structure.").

_____CF Inflight argues that a "flexible member," any number of which may be comprised by one cable, extends from mounting means that supports the camera to the pulleys, winches, and reels; the "flexible members" are those portions of the cable within the three-dimensional space.  Pl.'s Mem. at 9; Hr'g Tr. at 131.  That the support structures or attachment points are multiple should not require the interpretation to mean the cables are also are multiple.  Hr'g Tr. at 174.  To the extent that the same function could be achieved by less than three total cables does not obviate the requirements and the functionality as described in the '819 Patent.  Pl.'s Mem. at 24.  Cablecam disputes the suggestion that a "member" is only that "segment" that connects the mounting means support for the camera to the pulleys, etc.  Hr'g Tr. at 288.  At the hearing on January 26, 2004, in order to demonstrate the operational differences between the Skycam® and the Multi-V to the Court, Cablecam assembled an exhibit of the Multi-V framework.  Hr'g Tr. at 210.  By using two cables, woven through a complicated system of pulleys,

10

Cablecam argues that the Multi-V does not violate the "three elongate, flexible members" language of Claim 1 of the '819 Patent that requires the flexible members be connected to the camera gimbals themselves. D.'s Opp'n at 21, 26; Hr'g Tr. at 210-216. In contrast, the Multi-V system floats the cable segments through pulleys that attach to the equipment support member in which the camera is housed. Id. As a result of its elaborate pulley system, Cablecam argues that the cables it employs do not change length nor create independent members within the three-dimensional space in violation of the '819 Patent. Hr'g Tr. at 221. Most significantly, Cablecam argues that the '819 Patent relies on longstanding technology in the field and that the Multi-V system employs innovative techniques intended to remedy the known disadvantages to the prior technology. D.'s Opp'n at 35. A conclusion of literal infringement at this juncture would prematurely determine whether the Multi-V operational structure is fundamentally similar to the Skycam® device; understandably, the two camera systems provide a comparable function, but the intricacies of their operation, design, and construction may prove different from those identified in the '819 Patent.

      3.    Cablecam's Alleged Infringement Under Doctrine of Equivalents

      CF Inflight claims, in the alternative, that the Multi-V infringes the '819 Patent under the Doctrine of Equivalents by performing the same function in the same way. An accused product infringes if it embodies each claim element or its equivalent. Hilton Davis Chemical Co., 62 F.3d at 1517-18. If the differences between the patent and the infringing device are insubstantial, infringement will be found under this doctrine if the accused product performs substantially the same function as the claimed invention, in

11

substantially the same way, to achieve substantially the same result.  Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 608 (1950); Warner-Jenkinson Co. v. Hilton Davis Chemical Co., 520 U.S. 17, 39 (1997).  If a claim element or its equivalent is missing, there is no infringement under the Doctrine of Equivalents.  Hilton Davis Chem. Co., 62 F.3d at 1518.  The test for determining equivalents of a "means for" limitation under 35 U.S.C. § 112 ¶ 6 is "whether the differences between the structure in the accused device and any disclosed in the specification are insubstantial."  Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus. Inc., 145 F.3d 1303, 1309 (Fed. Cir. 1998).  The question of function when discussing video footage seems resolvable; naturally, two cameras when positioned similarly will capture images in a like manner.  Whether the means to accomplish this task employed by the Multi-V are so imitative of the patented Skycam® technology, however, is a more complicated question.

CF Inflight points to Mr. Rodnunsky's U.S. Patent No. 5,224,426 ("426 Patent") to illustrate that the language allows for an interpretation whereby one continuous cable can be perceived in segments such that each segment is an independent part.  Hr'g Tr. at 229-245.  CF Inflight argues that Mr. Rodnunsky was aware of Mr. Brown's previous technology because he cited to Brown's U.S. Patent No. 4,625,938 in his own '426 Patent.  The referenced Brown patent depicts a diagram that is identical to that in the '819 Patent, the one he allegedly infringed.  Hr'g Tr. 229-245.  Mr. Rodnunsky testified that he never saw nor was he involved in the writing and construction of the '426 Patent such that he would have inspected the references cited therein.  Id.  CF Inflight also argues that Mr. Rodnunsky's deposition testimony and declaration both demonstrate his knowledge

and awareness of angular isolation technology as referenced in the '819 Patent. Pl.'s Hr'g Ex. 23. Despite his testimony to the contrary, it is CFInflight's position that Mr. Rodnunsky does understand and employ the technology by using a camera that relies on the technology for its system.

_____In order to conclusively resolve the dispute with respect to either the literal infringement or infringement under the Doctrine of Equivalents of the '819 Patent, this Court would need to engage in a claim construction analysis. U.S. Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554, 1568 (Fed.Cir. 1997) ("Claim construction is a matter of resolution of *disputed* meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement." (emphasis added)). In general, "a patent must describe the exact scope of an invention and its manufacture to 'secure to [the patentee] all to which he is entitled, [and] to apprize the public of what is still open to them.'" Markman v. Westview Instruments, Inc., 517 U.S. 370, 373 (1996) (quoting Art. I, § 8, cl. 8) (citation omitted). In a preliminary injunction context, a court may, in exercising its discretion, decide to interpret the claim conclusively. Boehringer Ingelheim Animal Health, Inc. v. Schering-Plough Corp., 984 F. Supp. 239, 245 (D.N.J. 1997) citing Sofamor Danek Group, Inc. v. DePuy-Motech, Inc., 74 F.3d 1216 (Fed. Cir. 1996) (Although "the trial court has no obligation to interpret [a claim] conclusively and finally during a preliminary injunction proceeding.... [It] may exercise its discretion to interpret claims at a time when the parties have presented a full picture of the claimed invention."). Consistent with the Supreme Court decision in Markman, many courts hold a "Markman hearing" in order to construe

13

the terms of a claim.  Id.  It is this Court's practice to hold such a hearing prior to

interpreting a claim, particularly as is the case here, where the material terms of the claim

are in dispute.[3]  Based on the written submissions of the parties, the testimony and

exhibits presented at the evidentiary hearing on January 26, 2004, and a preliminary

reading of the '819 Patent, the Court concludes that both the Skycam® and the Multi-V

perform essentially the same function in that they both provide aerial footage within a

defined three-dimensional space.  At this stage in the proceeding, however, that similarity

is insufficient to conclude that the two camera systems employ the same elements or

equivalents under the terms of the '819 Patent.  Therefore, the first prong of the

preliminary injunction analysis, likelihood of success on the merits, has not been clearly

established.

### C.    Likelihood of Irreparable Harm

Plaintiff claims that Defendants' illegal entry into the small market has affected

the Plaintiff's business, caused confusion among viewers of sporting events, and

prevented Plaintiff from televising the Super Bowl.  Pl's Mem. at 26.  It will likely also

impact future potential contracts with the NCAA and the NBA.  Id.

A preliminary injunction does not issue unless there is a threat of irreparable

injury.  Cinema Patents Co., Inc., v. Craft Film Laboratories, Inc., 42 F.2d 749 (D. Del.

---

[3] On the basis of his extensive experience inventing, developing, and utilizing camera systems, the Court accepted Mr. Brown as an expert of ordinary skill in the art only for purposes of the preliminary injunction hearing. Hr'g Tr. at 120.  Though Mr. Brown's expertise in cinematography is unquestioned and generally helpful to the Court in that regard, the substance and manner of his testimony made clear his interest in the outcome of this matter and the long-standing business relationship he has with the Mr. Rodnunsky as competitors.  The Court concludes that Mr. Brown's testimony, viewed in its entirety,  is of little guidance on claim construction and patent language interpretation.

1930); Best Foods, Inc., v. Hemphill Packing Co., 295 F. 425 (D. Del. 1924). The

threatened damage to plaintiffs must be irremediable. Hand v. Missouri-Kansas Pipe

Line Co., 54 F.Supp. 649, 651 (D. Del. 1944). Where a patentee makes a strong showing

of likelihood of success on merits of its infringement claim, for the purpose of

preliminary injunction, the patentee is entitled to a presumption of irreparable harm.

Atlas Powder Co. v. Ireco Chems., 773 F.2d 1230, 1232-33 (Fed.Cir.1985). "This

presumption derives in part from the finite term of the patent grant, for patent expiration

is not suspended during litigation, and the passage of time can work irremediable harm."

Impax, 235 F. Supp at 396. If a patent holder makes a "clear showing" of ownership,

validity, enforceability, and infringement, the Court may presume irreparable harm.

Sunrise Medical HHG, Inc., 95 F.Supp.2d at 435. If the patentee does not make such a

clear showing but can establish only a "reasonable" likelihood of success on the merits,

then he also must make a separate showing of irreparable injury. Id. While CF Inflight

has made a reasonable showing of validity and infringement of the '819 Patent, Cablecam

has also provided evidence of invalidity and non-infringement sufficient to require further

exploration of these issues through a proper claim construction hearing. As such, the

presumption of irreparable harm cannot extend and the Court turns its inquiry to the

substantive arguments of irreparable harm.

     Plaintiff claims that allowing the Defendants' allegedly infringing system to

operate at the Super Bowl will cause irreparable harm by denying Plaintiff the

opportunity to showcase its technology, offering Defendants' system advertisement worth

millions of dollars irreplaceable through monetary compensation. Pl's. Mem. at 26. CF

Inflight claims to have been drastically affected by Cablecam's alleged intrusion into the market place, including lost opportunities to infuse additional capital into the company and detriment to longstanding business relationships.  Hr'g Tr. at 38.  Based only on conversations with industry executives, Mr. Thompson testified to confusion in the marketplace between the Skycam® and the Multi-V.  Hr'g Tr. at 38-39.   Defendant counters that Plaintiff was aware of Defendant's business activities as early as August 2003; during the 2003-04 NFL football season, Defendant's system operated at twenty two football games.  Def.'s Opp'n at 2.  To support this contention, Defendant cites to Citibank, N.A. v. Citytrust, 756 F.2d 273, 275 (2nd Cir. 1985) in which the court notes that delay in seeking injunctive relief may show the absence of irreparable harm. Citibank, 756 F.2d at 276.  Defendant further argues that Plaintiff's claims that price erosion, loss of market share and customers, and advertising constituting irreparable harm are easily calculable in monetary damages and are due, in part, to Plaintiff's own choice to enter an exclusive contract.  Id.

Cablecam argues that CF Inflight's failure to allege that the Multi-V system infringed the '819 Patent throughout the 2003 NFL season and post-season playoffs, cautions against a finding of irreparable harm from its use at the Super Bowl.  Hr'g Tr. at 286.  Mr. Thompson's testimony confirmed that the exclusivity contract extends until June 2005, which includes the 2004 NFL football season.  Hr'g Tr. at 62.  That CF Inflight's contract will preclude it from obtaining additional work until six months after the expiration of the patent further cuts against the argument of irreparable harm warranting preliminary injunction.  The Court acknowledges the inherent harm in patent

16

infringement, but the threat to CF Inflight is not so imminent as to warrant such an extreme injunctive relief.

**D.    Balance of Hardships**

Conversely, an examination of the hardships that may befall Cablecam as a result of an injunction demonstrates a likelihood of more widespread harm than that suffered by CF Inflight at this juncture.  Before granting an injunction, a district court must balance the relative harm to the parties, i.e., the potential injury to the plaintiff if an injunction does not issue versus the potential injury to the defendant if the injunction is issued. Novartis Consumer Health, Inc., 290 F.3d at 596.  Important considerations in weighing the balance of hardship include, but are not limited to, whether the hardship to the alleged infringer would be merely temporary in duration and whether the infringer had yet entered the market.  Ortho Pharm. Corp. v. Smith, 15 U.S.P.Q.2d 1856 (E.D.Pa.1990).

Plaintiff proposes that because Defendants have only recently introduced their product to the market, the harm suffered is less severe.  Plaintiff cites to Atlas Powder Co. v. Ireco Chems., 773 F.2d 1230, 1234 (Fed. Cir. 1985) for the proposition that a patent's short duration is not a factor in favor of Defendant in the balance of the equities. Defendant counters that punitive injunctive action would force both CBS and Cablecam to incur substantial damages as a result of Plaintiff's own poor business choice.  Hr'g Tr. at 13.  Mr. Rodnunsky testified that as of January 26, 2004 the Multi-V system had been assembled in preparation for the Super Bowl.  Hr'g Tr. at 217.  Cablecam has incurred the expense of transporting its crew and equipment to the Super Bowl game site in Houston. Id.  As a consequence of injunction, Cablecam would likely lose the 2004-05 football

17

season contract with Fox, absorb the expense incurred by preparing the Super Bowl equipment, and forfeit the contract with CBS. Hr'g Tr. at 218. Failure to complete the contract as agreed would damage the company's reputation in this cottage industry. Hr'g Tr. at 218.

Finally, the Court rejects CF Inflight's suggestion that it could fill the gap by making the Skycam® available to CBS for the Super Bowl. Hr'g Tr. at 46. To do so binds a third party to employ CF Inflight's system and make a choice it had already rejected. Pl.'s Reply at Ex. A The immediacy of the harm likely to affect Cablecam and third parties dissuades the Court from issuing the injunction.

### E.    **Impact on Public Interest**

Lastly, in order to obtain a preliminary injunction, CF Inflight must establish that doing so outweighs the public interest in experiencing aerial footage of the 2004 Super Bowl. Plaintiff provides only minimal support for this point, focusing on the public interest inherent in protecting patent rights. "Typically, in a patent infringement case, although there exists a public interest in protecting rights secured by valid patents, the focus of the district court's public interest analysis should be whether there exists some critical public interest that would be injured by the grant of preliminary relief." Hybritech Inc. v. Abbott Laboratories, 849 F.2d 1446, 1458 (Fed.Cir.1988) (footnotes omitted) (finding the public interest in enforcing valid patents outweighed the adverse impact on the market caused by the alleged infringer's absence). In patent cases, "the focus of the district court's public interest analysis should be whether there exists some critical public interest that would be injured by the grant of preliminary relief." Lawman Armor Corp.

18

v. Winner Intern., Inc. 2002 WL 123342, 20 (E.D.Pa., January 28, 2002). While courts rarely deny injunctive relief in order to protect *solely* the public interest, where a likelihood of infringement has been shown, the public interest may be served by vindicating a patentee's rights. Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1547-48 (Fed.Cir.1995) (en banc) (citing instances); Smith Int'l, Inc. v. Hughes Tool Co., 718 F.2d 1573, 1581 (Fed.Cir.l983). This is not always presumed, however. Zacchini v.Scripps-Howard Broadcasting Co., 433 U.S. 562, n. 12 (1977)(conjecturing that the broadcast of the film in question might stimulate the public interest in seeing the act live).

Were the injunction issued, the viewing public would lose the footage provided by the aerial three-dimensional camera angles at the most significant NFL football game of the season. The Court is not persuaded by CF Inflight's argument that the public interest is minimal because prior to the use of Skycam® during the 2003 Super Bowl, no such camera perspective existed. Hr'g Tr. at 277. The mere suggestion that because the aerial view is novel, the public will not be disadvantaged by its absence cuts against CF Inflight's own argument that because it is the most widely viewed sporting event, the Super Bowl provides international exposure and notoriety. Pl.'s Mem. at 5. If it would confer such a tremendous benefit to CF Inflight from public exposure, it stands to reason that inherent in the public demand for aerial footage is a public interest. It was, CF Inflight argues, precisely that public interest when combined with persuasion from CF Inflight and the television networks that led the NFL to agree to flying camera system use at all. Pl.'s Reply at 3. While there may not exist a compelling concern for public health,

there is most certainly a public demand and interest in experiencing this visual perspective.

## V.    CONCLUSIONS OF LAW

1.  Plaintiff has not established the existence of likelihood of success on the merits independent of a claim construction analysis by the Court.  The testimony provided at the hearing on January 26, 2004 demonstrates the clear need for a formal <u>Markman</u> hearing.

2.  CF Inflight has not satisfied the irreparable harm requirement for the issuance of a preliminary injunction.

3.  Cablecam will suffer irreparable harm if an injunction is issued. If an injunction is issued, Cablecam will be forced to breach its contract with CBS.  Cablecam and CBS have expended significant financial resources in anticipation that the Multi–V will be utilized during the 2004 Super Bowl.  These expenses cannot be recouped if an injunction is issued.

4.  The public interest leans toward denying the injunction.  Granting injunctive relief will deny the public the unique perspective provided by an aerial camera system during the Super Bowl.  Granting the relief requested will also impact the rights of third parties, including CBS and the NFL.

5.  Accordingly, the Court denies Plaintiff's Motion for Preliminary Injunction prohibiting the sale, manufacture, use, or offer for sale of the camera systems by Defendants and those associated with them, thereby preventing additional irreparable

harm to Plaintiff through infringement of the '819 Patent, including use of the system
at the upcoming Super Bowl in February 2004 (Doc. No. 5).

6. To the extend that any of the foregoing conclusions of law constitute a finding of fact,
such conclusion or conclusions shall be deemed included in the finding of fact herein.

## VI.    CONCLUSION

For all of these reasons, Plaintiff's Motion for Preliminary Injunction is DENIED.
The Motion for Expedited Discovery is DENIED as moot, and The Motion to Strike
(Doc. No. 30) is GRANTED. An appropriate Order follows.

BY THE COURT:

_____
Legrome D. Davis, J.

21

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CF INFLIGHT, LTD, | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
|         v. | : | |
| | : | |
| CABLECAM SYSTEMS, LTD, et al. | : | NO. 03-CV-5374 |
|     Defendants. | : | |

## ORDER

AND NOW, this        day of January, 2004, upon consideration of the Motion for Preliminary Injunction filed on December 24, 2004 by CF Inflight, LTD ("Plaintiff") (Doc. No. 5) and all related written submissions and exhibits, the Motion for Expedited Discovery filed on December 29, 2004 by Plaintiff (Doc. No. 6), the Transcript of the Evidentiary Hearing conducted on January 26, 2004 (Doc. No. 28), the Motion to Strike the Post Hearing Findings of Fact and Conclusions of Law filed on January 28, 2004 by Defendant (Doc. No. 30), and the Response in Opposition to the Motion to Strike filed on January 28, 2004 by Plaintiff (Doc. No. 29), it is hereby ordered that:

1.      Plaintiff's Motion for Preliminary Injunction (Doc. No. 5) is DENIED.

2.      The Motion for Expedited Discovery (Doc. No. 6) is DENIED as moot.

3.       The Motion to Strike (Doc. No. 30) is GRANTED.


BY THE COURT:


_____

Legrome D. Davis, J.

22